■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK FEA,

---

Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN PRUNTY, Appellant.—Judgments, Supreme Court, Bronx County, both rendered on March 18, 1977, affirmed. Concur—Lupiano, J. P., Fein and Lane, JJ.; Lynch and Sandler, JJ., dissent in part in the following memorandum by Sandler, J. The defendants, Frank Fea and John Prunty, appeal from a judgment of the Supreme Court, Bronx County, convicting each of them after a jury trial of assault in the second degree, assault in the third degree (two counts), and convicting Prunty also of possession of a weapon in the fourth degree. The trial testimony involved assaults on two separate occasions committed in an effort to compel the victims to make payments due under usurious loan transactions. One assault, that on Brescia, took place in Bronx County. The other, involving the Mazza-Zerbo counts, occurred in Rockland County. It was in connection with this latter event that Prunty was convicted of possession of a gun, and both defendants were convicted of assault in the second degree (Mazza) and assault in the third degree (Zerbo). The evidence was more than sufficient to establish that the defendants had committed the criminal acts charged. Nor is a substantial legal issue presented with regard to the conviction for assault in the third degree arising out of the Brescia incident. The principal question presented on this appeal is whether Bronx County had geographical jurisdiction to prosecute with regard to the Rockland County assaults. I have come to the reluctant conclusion that it did not. These are the relevant facts. Mazza with two partners owned a painting company in Yonkers, Westchester County, that desperately needed money to pay its painters. Mazza was introduced to Fea by Zerbo. At a meeting in Bronx County in July, 1974, Mazza received a $15,000 loan that was to be repaid at $750 per week. Thereafter, Mazza and a partner made four weekly payments to Fea at their Yonkers office. In August, 1974, Mazza negotiated a new $10,000 loan on condition that he was to pay as to that loan $2C9 interest per week, making a total of $950 required to be paid each week. It was agreed that the money would be collected weekly at the Yonkers office but that if Fea did not appear at the close of business on Friday in any particular week, Mazza or a partner was to deliver the payment at the Rosedale Bar in Bronx County. Thereafter, Mazza and a partner made nine $950 payments, about five of which were delivered at the Rosedale Bar. On one occasion, Fea told Mazza to "Keep the payments up. Keep bringing the payments down." By November, 1974, Mazza was no longer able to make the required payments and, to avoid Fea, absented himself from his office during November and December of 1974 and January of 1975. On February 3, 1975, Fea, accompanied by Prunty, located Mazza and Zerbo at a construction site in Irvington, New York. Fea instructed the two men to follow his car because "they were taking [Mazza and Zerbo] to speak to somebody." Eventually the four men in two vehicles arrived at a bar in Rockland County where Mazza and Zerbo were beaten, Mazza in particular suffering severe injuries. Prunty exhibited a gun in the course of the assaults. At intervals during this episode, Mazza and Zerbo were told in forceful language that they were expected to resume their illegal payments. Bronx jurisdiction to prosecute these Rockland County assaults depends upon the claimed applicability of CPL 20.40 (subd 2, par [c]) which extends geographical jurisdiction to a county where, as here pertinent: "2. Even though none of the conduct constituting such offense may have occurred within such county: * * * (c) Such conduct had, or was likely to have, a particular effect upon such county or a political subdivision or part thereof, and was performed with intent that it would, or with knowledge that it was likely to, have such particular effect therein". CPL

20.10 (subd 4) defines "Particular effect of an offense" as follows: "When conduct constituting an offense produces consequences which, though not necessarily amounting to a result or element of such offense, have a materially harmful impact upon the governmental processes or community welfare of a particular jurisdiction, or result in the defrauding of persons in such jurisdiction, such conduct and offense have a 'particular effect' upon such jurisdiction." The District Attorney contends that the Rockland County beatings were intended to compel Mazza to resume payment on his usurious loans and that these payments were expected to occur, at least in part, in Bronx County. Thus, it is claimed that the assaults were committed with the knowledge or intent that they were likely to have a materially harmful impact on the "community welfare" of Bronx County. "Community welfare" is nowhere defined in the statute, nor am I aware of any legislative history that illuminates its meaning clearly. The only substantial clue to legislative intent is found in the following illustration presented in the Practice Commentary (McKinney's Cons Laws of NY, Book 11A, CPL 20.40) by (now) Judge Richard Denzer, the principal author of the CPL: "Paragraph (c) of this subdivision (subd. 2) may be illustrated by a criminal mischief offense in which the culprit maliciously blows up a dam in Putnam County near the Westchester County line, thus flooding some Westchester territory—a result which he either intends or knows is likely to occur. In such a case, jurisdiction of the crime lies in Westchester as well as in Putnam." Although illustrations of this kind are not automatically dispositive, the unusual character of the one provided by the principal author of the law surely raises some doubt that the "community welfare" of Bronx County was "materially harmed" by an assault in Rockland County intended to compel the victim to make usurious payments, some of which might be expected to occur in The Bronx. The meaning of the term was also addressed in *Matter of Steingut v Gold* (54 AD2d 481, affd 42 NY2d 311) where the following was said (p 488) in the opinion of the Appellate Division. "The result intended to be effected by the definitions was that the conduct committed must cause a harmful impact, not on any individual or individuals, but on a whole community and the harm must be * * * to the welfare of an entire community. The word 'materially' was added to assure that the harm was one which had a definable and important—not a minor—effect." It is not necessary to subscribe to this definition in its full sweep to perceive the unlikelihood that the term "community welfare" was intended to apply to the possibility that someone might make payments pursuant to an illicit loan transaction somewhere in a particular county. Although the immediate question before us was not discussed by the Court of Appeals in its opinion in *Matter of Steingut (supra),* which was indeed not an issue presented by that case, it surely has some significance that the opinion of the Court of Appeals alluded to the illustration in the Practice Commentary quoted above. The conclusion that Bronx County lacked geographical jurisdiction over the Rockland County events is not one that I have received with any sense of satisfaction. It is not easy to read of the activities of these two defendants as described in testimony credited by the jury without a sense of anger. And it is hard to avoid the judgment that a sensible and balanced evaluation of the jurisdictional interests involved presents a persuasive argument for a statutory arrangement that would extend jurisdiction on these and analogous facts. Nonetheless, as the statutory sections now read, I am persuaded that Bronx County lacked jurisdiction to prosecute the defendants for the Rockland County assaults, and that the judgments of conviction should be modified accordingly.